# J. W. Batchelder v. Frank J. and Ruth Mantak, George E. and Barbara B. Trask and Edward J. Donnis

[392 A.2d 945]

No. 50-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 14, 1978

458

*Sullivan & McCaffrey*, Rutland, for Plaintiff.

*Ruth H. Mantak*, Bloomfield, Connecticut, *pro se*.

Hill, J. Plaintiff Batchelder brought this action to recover the alleged balance due from the defendants Frank and Ruth Mantak, George and Barbara Trask, and Edward Donnis for labor and services performed for them. The trial court dismissed the action against Donnis. After hearing, the court made findings and conclusions and awarded judgment against the Trasks and the Mantaks.

The lower court's findings of fact may be summarized as follows. Frank and Ruth Mantak, who own real estate north of Route 11 in Londonderry, Vermont, and George and Barbara Trask, who own real estate south of Route 11, wanted a land survey of their respective properties to determine the actual amount of their acreage. At all times material the

plaintiff was self-employed performing mostly land record work and some field survey work. "Through Edward Donnis the plaintiff was engaged to do some work" for the Trasks and the Mantaks. The plaintiff was to supply the land record research and Donnis was to perform the field survey utilizing that research. Pursuant to the "engagement" the plaintiff prepared and delivered to the defendants a series of maps establishing the evolution of the boundaries of the defendants' properties, as determined from the land records. After delivery of the maps to the defendants, another surveyor hired by the Trasks, one O'Hara, surveyed the Trasks' property utilizing the deed and boundary research performed by the plaintiff. In the course of his work, plaintiff billed the defendants directly, and they paid him in part. The court found that the labor and services and the hourly rate charged by the plaintiff were reasonable. The court then entered judgment in favor of the plaintiff for the unpaid balances due on the bills.

The instant action was commenced by "Batchelder Engineering Company, a Vermont corporation organized and existing in the State of Vermont." Immediately before the hearing commenced, the plaintiff orally moved to change the name of the plaintiff to J. W. Batchelder, claiming that the corporation had been dissolved many years before the services of Batchelder were engaged and that it was named plaintiff in error. The defendants objected to this substitution of parties and moved to dismiss the action on the grounds that it was brought improperly and that prejudice would result to the defendants if the substitution were allowed. The court denied defendants' motion and allowed, at least impliedly, the amendment. The defendants contend the court erred in denying their motion.

 D.C.C.R 15 (a), which is identical to V.R.C.P. 15 (a), permits an amendment to a party's pleading by leave of court when justice so requires. Such an amendment may include substitution of plaintiffs. *Staggers* v. *Otto Gerdau Co.*, 359 F.2d 292, 296–97 (2d Cir. 1966); 3 Moore's Federal Practice ¶ 15.08[5] (2d ed. 1974). The mandate of Rule 15(a) that leave "shall be freely given" is in keeping with traditional Vermont practice.

> The historical Vermont tradition of liberality in the allowance of amendments to the pleadings, where no prejudice is involved, has not been abrogated by the . . . Vermont Rules of Civil Procedure. Rule 15(a) V.R.C.P. The measures of that liberality have been many times stated in our cases. [*Tracy* v. *Vinton Motors, Inc.,* 130 Vt. 512, 513–14, 296 A.2d 269, 271 (1972)].

The trial court found that the defendants would not be prejudiced by the substitution of the parties. We agree. The defendants' ability to defend was not hampered since the basis of the suit remained the same and the principals in the case remained the same. The only witness in the plaintiff's case, J. W. Batchelder, would have remained the same with or without the amendment. And, from all that appears, the amendment was not sought in bad faith or for purposes of delay. See *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). The trial court did not abuse its discretion in allowing the amendment.

Upon what appears to have been merely an oversight, or perhaps the result of a nearly two and one-half year interval between the time of the hearing and the filing of the court's findings and conclusions, the trial court failed to change the captions in its judgment orders to reflect the amendment allowed. The necessary corrections can be made by this Court. D.C.C.R. 60(a); see V.R.C.P. 60(a).

The Mantaks, who are residents of Connecticut, claim they never received notice of or appeared in the action. They assert that the judgment rendered against them is therefore void for want of jurisdiction. The plaintiff, who had knowledge of the Mantaks' Connecticut address, contends that they were served properly when their property in Londonderry was attached and copies of the complaint with a description of the property attached were left with the Town Clerk in Londonderry, it only being noted in the sheriff's return that the Mantaks were "out of state." See 12 V.S.A. § 3291 (prior to 1972 amendment); *Deal* v. *Powell*, 88 Vt. 404, 92 A. 648 (1914).

There was no evidence introduced at the trial establishing that Ruth Mantak owned any property in London-

derry. The trial court's finding to the contrary is clearly erroneous and cannot be sustained. D.C.C.R. 52(a); see V.R. C.P. 52(a). Service of process as to Ruth Mantak was predicated on the purported attachment of her real property. Since she had no property to attach, service of process was never properly effectuated and the court was without power to enter judgment against her, absent a voluntary appearance on her part.

The purported service of process on Frank Mantak was also defective, but for a different reason. This action was commenced in 1970. The predecessors to our current V.R.C.P. and D.C.C.R. 4(e) and (g), 12 V.S.A. §§ 911–914, which were in effect when this action was commenced, required that notice be given to an out of state defendant either personally or by publication.

> The importance of the duty imposed is obvious, for the giving of the notice charges the property of the defendant in the State the same as if there had been service within the State. [*Thomas* v. *Graves*, 90 Vt. 312, 315, 98 A. 508, 509 (1916).]

It is not enough that the attachment is made; it is also required that notice be given to the out of state defendant. The 1972 amendment to 12 V.S.A. § 3291, relating to the attachment of real property, makes this clear. Indeed, the Fourteenth Amendment requires such notice. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). It is clear that Frank Mantak was never properly served with process; the trial court was thus without power to enter judgment against him, absent a voluntary appearance on his part.

The plaintiff claims that if personal jurisdiction was not obtained through proper service, nevertheless the Mantaks waived the defect by entering their appearance through an attorney. The record discloses that at the opening of the hearing it was noted by the court and by counsel that the Mantaks had not answered the complaint and were not represented in court. The following colloquy then took place between the court and counsel:

[Attorney for the Trasks]: I have discussed the fact that the Mantaks have not entered an appearance. The Mantaks are related to my client, Trask, and his wife has authorized me to enter an appearance on behalf of them in this action. There are questions of possible problems of service. If [plaintiff's attorney] agrees, . . . I would, with the Court's permission, enter an appearance.

[Plaintiff's Attorney]: We have no objection.

Judge Ellison: The record should show that [the Trasks' attorney] represents Mr. and Mrs. Mantak as well as George E. and Barbara B. Trask.

Despite the statement by the court at the hearing that the Mantaks were represented, the court expressly stated in its findings of fact that the Mantaks were not present at the hearing and were *not* represented. Nevertheless, the court gave judgment against the Mantaks. On appeal, the Mantaks argue that the Trasks had no authority to bind them and that they (the Mantaks) never authorized the Trasks' attorney to enter an appearance for them.

Although a general appearance by an attorney cures all defects of service of process, *Howe* v. *Lisbon Savings Bank,* 111 Vt. 201, 215, 14 A.2d 3, 9 (1940), when the purported clients have never been given any notice of the pendency of the suit, as is the case here, no unauthorized appearance binds them. *Whitney* v. *Silver,* 22 Vt. 634, 637 (1850); *Abbott & Co.* v. *Dutton,* 44 Vt. 546, 551 (1872). In any event, the court's finding of fact that the Mantaks were not represented at trial, although contradictory to the court's statement made during the trial, controls, and we will not overturn that finding here. D.C.C.R. 52(a); see V.R.C.P. 52(a). Without proper service of process and without an appearance on their part, the judgment against the Mantaks must be reversed.

The trial court concluded that George and Barbara Trask were liable for the balance due on the bill submitted for work done on the property located south of Route 11. The Trasks assert several claims of error on appeal.

They first urge that the lower court erred in excluding certain evidence from the trial. The court excluded testimony

from a neighbor of the Trasks which would have elicited details of work performed by the plaintiff for that neighbor. The court properly excluded the proffered evidence, as it had no relationship to the bill in question and was thus immaterial to the issue at hand. *Walworth* v. *Barron,* 54 Vt. 677, 684 (1881); *Phelps, Dodge & Co.* v. *C. B. Conant & Co.,* 30 Vt. 277, 284 (1858). No abuse of discretion appears. See *Bradley* v. *Buck,* 131 Vt. 368, 371, 306 A.2d 98, 101 (1973).

The Trasks also assert that the court erred in excluding from evidence Mr. Trask's opinion as to the value of the services he received from the plaintiff. Opinions as to the value of services, at least where, as here, the services involve highly technical knowledge, should not be admitted until a proper foundation is laid establishing that the witness has sufficient knowledge of or acquaintance with the services rendered. The sufficiency of a witness's knowledge of or acquaintance with a particular service depends, to a large degree, upon the discretion of the trial judge. Mr. Trask is a real estate broker and investor, but does not purport to possess any special knowledge or expertise in the field of surveying or land record research. The court evidently felt that Mr. Trask had not demonstrated sufficient skill, knowledge, or experience in the field of land record research to render an opinion as to the value of plaintiff's services. See *Stone* v. *Tupper,* 58 Vt. 409, 411–12, 5 A. 387, 389 (1886); *Richardson* v. *Persons,* 116 Vt. 413, 415, 77 A.2d 842, 843 (1951); *Koerber* v. *Middlesex College,* 128 Vt. 11, 16, 258 A.2d 572, 575 (1969). The court did not abuse its discretion in so holding.

The Trasks' second claim of error involves the dismissal of co-defendant Donnis from the case. In dismissing Donnis, the lower court evidently concluded that there was insufficient evidence upon which to establish a contractual relationship between Donnis and Batchelder. Neither the plaintiff nor Donnis' co-defendants objected to the granting of the motion to dismiss.

The Trasks argue here that "[t]he issues could not be properly decided without his [Donnis'] testimony." We fail to see how the Trasks, as defendants, were injured or prejudiced by the dismissal of Donnis from the action. If they con-

sidered Donnis' testimony to be crucial to their case, all they had to do was call him as a witness. It goes without saying that a witness need not be a party to the action in order to testify.

The Trasks' third asserted claim of error is that plaintiff should be precluded from any recovery because he engaged in the unauthorized practice of law. They assert that plaintiff's activities sufficiently constituted the illegal practice of law to deny him the right to use the courts of this state to collect fees for such activities.

 There are two problems with the Trasks' position. First, the lower court expressly concluded that plaintiff was not engaged in the unauthorized practice of law. We cannot conclude, on the record before us, that there was no basis in the evidence for the court's conclusion. Secondly, even if some of the plaintiff's collateral activities here did constitute the unauthorized practice of law, the object of the contract, as found by the trial court, did not involve any illegality. The court found that plaintiff was engaged to do "some land record research," and that he prepared "a series of maps based on research of the land records . . . relative to the evolution of the boundaries of the Defendant's real estate." This, in itself, does not constitute the unauthorized practice of law. See *In re Welch*, 123 Vt. 180, 185 A.2d 458 (1962). "A bargain collaterally . . . connected with an illegal . . . act is not rendered illegal thereby if proof of the bargain can be made without relying upon the illegal transaction." Restatement of Contracts § 597 (1932). To be sure, where a contract grows immediately out of, and is connected with, an illegal or immoral act, our courts will not lend their aid to enforce it. *Buck* v. *Albee*, 26 Vt. 184 (1854). Such is not the case here, however.

 In their fourth assignment of error the Trasks urge that the evidence does not support a judgment for the plaintiff either on the basis of contract or on the basis of services performed. Upon a thorough review of the record, we cannot agree. There were essentially two witnesses in the case: the plaintiff's case consisted of plaintiff's own testimony, and the defendants' case consisted of Mr. Trask's testimony.

Evidently, the trial court credited much, if not all, of Mr. Batchelder's testimony, while discounting much of Mr. Trask's testimony. There was sufficient testimony from Mr. Batchelder to support a finding of an express oral contract with Mr. Trask for plaintiff's services. Although there was no mention of the amount or rate of compensation to be paid plaintiff, this is not essential to the formation of a contract. When a contract for services is silent as to the amount to be paid for those services, the law will imply a reasonable compensation. *Enos v. Owens Slate Co.*, 104 Vt. 329, 335-36, 160 A. 185, 188 (1932). Even without the finding of an express contract between the parties, there was sufficient evidence to support a finding that Mr. Trask accepted plaintiff's work product and utilized it to his benefit. Under this situation plaintiff would likewise be entitled to a reasonable compensation. See *Whitney v. Lea*, 134 Vt. 591, 367 A.2d 683 (1976). Plaintiff, qualified as an expert, testified as to the reasonableness of the bill submitted for his work. As noted above, Mr. Trask was not qualified to testify as to the value of the services rendered by the plaintiff. As such, plaintiff's testimony that his services and hourly rate were reasonable stood uncontroverted.

Defendants' final assignment of error involves the judgments rendered against Barbara Trask and Ruth Mantak. They claim that the judgments against them cannot lie because there was no evidence establishing that they partook in any of the negotiations or owned any interest in the properties subject to plaintiff's services.

We need not address the claim relating to Ruth Mantak, as the judgment against her must be reversed for want of jurisdiction, as noted above. As to Barbara Trask, the claim of error must be sustained. There was no evidence introduced at the trial linking Barbara Trask to any of the negotiations with the plaintiff. There was also insufficient evidence establishing that she owned any interest in the property involved in the contemplated survey. Without a request on her part for plaintiff's services, and without any benefit conferred on her, Barbara Trask cannot be liable to plaintiff on the basis of either contract or quasi contract. *Rowell v. Crow*, 93 Cal. App. 2d 500, 209 P.2d 149 (1949). She cannot,

of course, be liable merely on the basis of the husband-wife relationship. *Kelsey* v. *Kelley,* 63 Vt. 41, 47, 22 A. 597, 598–99 (1890). The judgment rendered against Barbara Trask must be reversed.

*The caption in this case is amended to show J. W. Batchelder as plaintiff. Let the records of the District Court be amended accordingly. The judgments against Frank and Ruth Mantak and Barbara Trask are reversed and judgments entered in their favor. The judgment against George Trask is affirmed.*